.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Roger Hood, | : | Case No. 3:09CV1341 |
| Plaintiff | : | |
| vs. | : | |
| | | **MEMORANDUM OPINION** |
| Commissioner of Social Security | : | **AND ORDER** |
| Defendant | : | |

Plaintiff seeks judicial review, pursuant to 42 U. S. C. § 405(g), of Defendant's final determination denying his claims for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act) and Supplemental Security Income (SSI) under Title XVI of the Act, 42 U. S. C. §§ 1381 *et seq*. Pending are briefs on the merits filed by both parties (Docket Nos. 16 and 19). For the reasons which follow, the Magistrate affirms the finding of the Commissioner and hereby dismisses Plaintiff's complaint.

## I. JURISDICTION

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006).

## II. PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI, claiming that he was disabled since February 17, 2005 due to left knee problems, arthritis and asthma beginning October 1, 2004 (Tr. 14, 33, 43-45,

265-267, 279). Plaintiff's initial claims were denied initially and after reconsideration (Tr. 33-35, 37-38,. 269-71, 274-76). Plaintiff filed a request for a hearing before an Administrative Law Judge (ALJ) on July 12, 2005 (Tr. 39). Plaintiff, represented by counsel, and Vocational Expert (VE) Chad Beck appeared and testified at a hearing conducted by ALJ Richard D. Letts on January 10, 2008 (Tr. 277). The ALJ published an adverse decision on June 25, 2008, denying Plaintiff's application for a period of disability (Tr. 24). The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner (Tr. 4-6). Plaintiff then filed this action seeking judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g) and § 1383(c).

### III. FACTUAL BACKGROUND

A.      *Plaintiff's Testimony before the ALJ*

At the time of the hearing, Plaintiff was 44 years old, weighed 180 pounds and was six feet tall (Tr. 291, 294). Plaintiff testified that he was a person with special needs. He withdrew from high school in the tenth grade, and he unsuccessful in completing the requirements for a general equivalency diploma (Tr. 293). Plaintiff had a valid driver's license without restrictions, but he only drove twice weekly within the City of Marion (Tr. 290-291).

Plaintiff was divorced in June 2007. He lived with his girlfriend, his seven year-old son, his girlfriend's brother, her sister-in-law and their two minor children (Tr. 292-2933).

Plaintiff had not worked since October 1, 2004. He last worked full time for approximately one year as a grill cook at a Marion McDonald's (Tr.295). Plaintiff could not meet the standing requirement of his job so he stopped working (Tr. 297). Prior to working at McDonald's, Plaintiff held full-time employment at Ohio Galvanizing where he injured his knee on February 18, 2002 (Tr 296-. 297). As a result of his injury, Plaintiff received Worker Compensation benefits until 2003. Plaintiff settled with the Worker Compensation Board for $30,000, receiving $16,675 net income which was now depleted (Tr. 298). Currently, he was receiving $450 per month in food assistance and $60 per month in child support. Otherwise, he relied on his girlfriend for support (Tr. 298-299).

Plaintiff testified that his asthma caused him to use an Albuterol inhaler "usually at nighttime" and during the day when he experienced shortness of breath (Tr. 302). The only other treatment that Plaintiff received for his asthma was administered during emergency room visits (Tr. 313). Despite this inflammatory disorder of the airways, Plaintiff continued to smoke cigarettes (Tr. 302).

Plaintiff did receive a full knee replacement, but continued to complain of severe knee pain (Tr.299, 301). On an ascending scale of one to ten with ten being the most severe, Plaintiff rated the pain in his knee as a "seven" both before and after his knee surgery (Tr. 312). When Plaintiff sat for a period of time (longer than "ten, fifteen minutes"), he experienced knee pain and cramping. To ease the pain, Plaintiff walked or moved around (Tr. 301). To avoid addiction, Plaintiff's physician did not prescribe medication for his knee pain (Tr. 312)

Plaintiff stated that he suffered from a pulled tendon in his right shoulder (Tr. 306). Due to the pain he experienced in his right shoulder, Plaintiff was unable to dress himself or lift anything with his right hand (Tr. 312). He described the pain in his shoulder as "it feels like somebody's, you know, hit me right there with their knuckle all the time" (Tr. 313). Additionally, the range of motion for Plaintiff's right arm was limited, and Plaintiff stated that he was only able to lift thirty pounds with his left arm (Tr. 313).

B.   *VE Testimony*

The VE characterized Plaintiff's past relevant work of a short-order cook at the light, semi-skilled level. The VE testified that Plaintiff could still perform his past work as a short order cook (Tr. 316). If the ALJ adopted the limitations found by Dr. Antonio Rosario on July 14, 2006, the VE opined that Plaintiff would not be able to perform any of his past work (Tr. 317). If Plaintiff were limited to sedentary unskilled work that was not fast paced or involved production quotas and restricted Plaintiff's exposure to fumes, gases and smoke, the number of sedentary jobs that Plaintiff could perform would be limited to table worker, sorter and inspector (Tr. 318).

The VE also testified that if additional limitations were placed on Plaintiff, such as working in an environment without exposure to smoke or fumes and without "fast-paced work that involved production quotas," the amount of available jobs which Plaintiff could perform would be reduced by fifty percent from an estimated 12,000 to 6,000 (Tr. 318). If forced to operate under the limitations in the assessment conducted by a physical therapist on January 26, 2007, Plaintiff could still perform work as a table worker, sorter, inspector (Tr. 318-319). Only twenty percent of the 12,000 jobs would be suitable for Plaintiff if he were unable to use his right arm to lift and have perhaps occasional limitations in reaching out in front of him or reaching overhead (Tr. 320-321).

In response to counsel's question about the impact of employment opportunities if the hypothetical plaintiff were "off task," the VE explained that being "off task" at least 20% of the day would preclude any competitive work. Plaintiff's counsel also posed the question to the VE that if a person were off task 10% of the time, would it become work preclusive. The VE responded that it this would cause problems; however, the VE did not respond that it would be work preclusive (Tr. 323).

### IV.  MEDICAL EVIDENCE

For the three month period from January 24, 2003 to April 24, 2008, Plaintiff was treated primarily by Dr. Antonio Rosario, a board-certified surgeon associated with the Smith Clinic in Marion, Ohio, medical source personnel at the Marion General Hospital Emergency Room and the Columbus Southern Medical Center.  http://www.smithclinic.com/physicians/rosario.htm.).  Plaintiff was treated primarily for severe pain from his left knee, arthritis and asthma (Tr. 33).

In 2003, Plaintiff underwent laser surgery on his left knee (Tr. 185). Thereafter, Dr. Rosario monitored the degeneration of Plaintiff's left knee pending preoperative clearance for a left knee arthroplasty. On February 16, 2005, Plaintiff advised Dr. Rosario that he was ready to proceed with knee replacement (Tr. 190). Four additional consultations were conducted before Dr. Rosario agreed to perform total knee replacement surgery (Tr. 190-195). The post-surgical relief included a prescription for Vicodin, postoperative home exercises and range of motion strengthening (Tr. 184).

4

A post operation examination of Plaintiff, conducted by Dr. Rosario on April 15, 2005, noted that Plaintiff had achieved nearly full extension of his left knee (Tr. 183).

On April 8, 2005, Walter Holbrook, a state medical consultant, determined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and /or walk approximately six hours in an eight-hour workday, sit approximately six hours in an eight-hour workday and engage in unlimited pushing and pulling (Tr. 156). Plaintiff could never climb using a ladder, rope, scaffold, kneel or crawl and he should avoid all exposure to fumes, odors, dusts, gases and poor ventilation (Tr. 157, 159).

During the post operative follow-up appointment on May 16, 2005, Dr. Rosario noted that Plaintiff had full extension of his knee and flexion of 110° (Tr. 182). Dr. Rosario authorized Plaintiff to return to work with the restriction of light duty subject to restrictions on excessive walking and weight bearing (Tr. 181).

At the post operative follow-up conducted on July 11, 2005, Plaintiff conveyed to Dr. Rosario that he fell down steps and was still experiencing pain in his knee (Tr. 178). Dr. Rosario noted that Plaintiff was doing quite well but delayed his return to work pending efforts to regain quadriceps strength (Tr. 178).

On August 22, 2005, Dr. Rosario noted that Plaintiff had full extension in his knee. An x-ray of Plaintiff's left knee showed good maintenance of the components. Dr. Rosario's treatment plan for Plaintiff included a follow-up appointment in October for release to work (Tr. 176). At the October follow-up appointment, Dr. Rosario concluded that Plaintiff's knee was well healed as the knee had full extension and flexion and was without swelling (Tr. 175).

On July 14, 2006, Dr. Rosario concluded that Plaintiff could lift a maximum of twenty-five pounds occasionally and five pounds frequently, stand and/or walk for a total of up to one hour during an eight hour workday, and in five to ten minutes increments uninterrupted, sit for a total of eight hours during the workday and in uninterrupted two hour increments. Plaintiff had no restrictions on

reaching, handling, and was limited to pushing and pulling occasionally. Dr. Rosario concluded that Plaintiff"s condition affected his work environment by restricting him from heights and moving machinery. However, Dr. Rosario did not limit Plaintiff's exposure to chemicals, dust or fumes. Dr. Rosario noted that a cane had been prescribed for Plaintiff (Tr 206-206A).

Plaintiff had extensive medical records documenting his visits to the Marion General Hospital Emergency Room between February 25, 2005 and September 24, 2007 (Tr. 197-198, 152-154, 163-166, 172-174, 203-205, 207-211, 212-218, 219-222, 225-226, 227-230, 231-233, 234-235, 236-239, 240-242). Plaintiff's earliest emergency room visit regarding pain in his left knee occurred on June 14, 2005, three months after his total knee replacement surgery. Plaintiff complained of severe pain, and Dr. Steven Draeger, the examining emergency room physician, assessed Plaintiff as experiencing post-operative pain. The treatment plan for Plaintiff included maintaining appointments with Dr. Rosario, and taking the prescriptions Toradol and Ultram as needed (Tr. 154).

Plaintiff returned to the emergency room on June 25, 2005. Dr. Betty Mitchell, the assessing physician, noted that Plaintiff requested Vicodin for his left knee pain and stated that Dr. Rosario had not prescribed pain medication for him. Dr. Mitchell reported that Plaintiff's scar on his left knee, "appears to be well healed." Dr. Mitchell also refused to prescribe any narcotics to Plaintiff and prescribed a knee immobilizer for Plaintiff's use. Dr. Mitchell did express concern regarding the frequency of Plaintiff's visits to the emergency room requesting Vicodin (Tr. 165).

On June 2, 2006, Chad C. Hensel, a physical therapist and certified strength and conditioning specialist, recommended that Plaintiff lift no more than twenty-five pounds, ambulate for more than five minutes, or ascend more than four steps (Tr. 202). On January 26, 2007, Mr. Hensel observed that Plaintiff demonstrated a significant increase in symptoms with moderate physical activity and he was unable to tolerate lifting more than 50 pounds. However, Plaintiff was capable of tolerating stairs, walking and sit-to-stand transfers "without significant increase in symptoms." It was Mr. Hensel's opinion that Plaintiff could tolerate a job that was primarily sedentary (Tr. 246).

6

On August 21, 2006, Plaintiff entered the Marion General Hospital Emergency Room with a primary complaint of pain to his right elbow. Plaintiff also complained of pain in his left knee (Tr. 207-211).

Plaintiff fractured his left hand, which was diagnosed on November 27, 2006, and subsequently went to the emergency room with complaints of left hand, right elbow and left knee pain on November 29, 2006. Plaintiff took Vicodin, which was prescribed for the fractured hand at the time of his emergency room visit. No additional medication was prescribed for Plaintiff (Tr. 212-218).

Plaintiff returned to the emergency room on April 27, 2007 with complaints of sharp chest pain and difficulty breathing. Plaintiff was diagnosed with atypical chest pain and inflamation of the pleura. Dr. Paul Cullier, the assessing physician, noted that Plaintiff had a stable calcified nodule within his lung, and prescribed Plaintiff a Prednisone inhaler (Tr. 227-228).

On July 16, 2007, Plaintiff again went to the emergency room, complaining of an exacerbation of pain in his left knee due to his twisting his left leg when he stepped into a hole. The assessing physician's treatment plan included rest, icing, and elevation of the knee. No additional pain medications, except the continuation of Ultram, were prescribed for Plaintiff (Tr. 231-232).

Complaining of severe pain in his right shoulder, Plaintiff went to the emergency room on August 30, 2007, and received a sling for his arm, as well as a prescription of Vicodin. Plaintiff was diagnosed with a compression injury of indeterminate age to the humeral head (Tr. 234-235).

On September 9, 2007, Plaintiff presented to the emergency room complaining of right shoulder pain sustained when lifting or carrying a heavy object. A prescription of Toradol was dispensed (Tr. 236-239). On September 24,2007, Plaintiff went to the emergency room complaining of shoulder pain, and received a preliminary diagnosis of tendinitis (Tr. 240-242).

Dr. Rosario made two residual functional capacity (RFC) evaluations of Plaintiff (Tr. 206-206A and 223-224). In his first evaluation from July 14, 2006, Dr. Rosario did not indicate whether Plaintiff needed additional breaks or if a morning break, lunch period and an afternoon break would be

sufficient, or if breaks in addition to the aforementioned breaks were needed (Tr. 206A). In his second evaluation of Plaintiff on March 8, 2007, Dr. Rosario indicated that Plaintiff would need breaks in addition to the aforementioned work breaks, but did not specify how many additional breaks would be needed (Tr. 223).

## V. STANDARD OF DISABILITY

To be entitled to disability insurance benefits, an individual must be under a disability within the meaning of the Social Security Act. *Rabbers v. Commissioner Social Security Administration*, 582 F.3d 647, 651-652 (6th Cir. 2009) (*citing* 42 U.S.C. § 423(a)(1)(E)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* (*citing* 42 U. S. C. § 423(d)(1)(A)). The regulations governing the evaluation of disability for DIB and SSI are identical for and are found at 20 C. F. R. § 404.1520, and 20 C. F. R. § 416.920, respectively. This five-step sequential evaluation process for determining whether an individual is disabled follows. *Id.* (*citing* 20 C. F. R. § 404.1520(a)).

The five steps are:

(1)   If the claimant is doing substantial gainful activity, the claimant is not disabled.

(2)   If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.

(3)   If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

(4)   If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

(5)   If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Id.* (*citing* 20 C. F. R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g); *see also Cruse v. Commissioner of Social Security,* 502 F.3d 532, 539 (6th Cir.2007); *Walters v. Commissioner of Social Secretary,* 127 F.3d 525, 529 (6th Cir. 1997)). The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner. *Id.* (*citing Jones v. Commissioner of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003)).

## VI. THE ALJ'S FINDINGS

Upon consideration of the evidence, the ALJ made the following findings:

1. Plaintiff met the insured status requirements of the Act through December 31, 2009.

2. Plaintiff had not engaged in substantial gainful activity since October 1, 2004, this date being the Plaintiff's alleged onset date (20 C. F. R. §§ 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. Plaintiff had the following severe combination of impairments: a history of a left total knee replacement; asthma; and right shoulder tendonitis (20 C. F. R. §§ 404.1520(c) and 416.920(c)).

4. Plaintiff did not have an impairment of combination of impairments that met or equaled one of the listed impairments in 20 C. F. R. Part 404, Subpart P, Appendix 1 (20 C. F. R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. Plaintiff had the RFC to perform work within the following limitations: (a) lift or carry 25 pounds with both hands occasionally and five pounds frequently; (b) sit for two hours at a one time, with normal breaks, for a total of eight hours in an eight-hour workday; (c) rarely bend, crouch, stoop squat, kneel, or crawl; occasionally push or pull; (d) frequently handle, feel and perform fine and gross manipulation; (e) frequently reach with left arm, but (f) Plaintiff cannot do repetitive reaching or overhead lifting with his non-dominant right arm. The ALJ also found that Plaintiff must avoid concentrated amounts of fumes, gasses or smoke; unprotected heights; climbing ropes, ladders, and/or scaffolding; and fast paced work or work with performance quotas (20 C. F. R. §§ 404.1567(a) and 416.967(a)).

6. Plaintiff was unable to perform any past, relevant work (20 C. F. R. §§ 404.1565 and 416.965).

7. Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was not disabled (*See* TITLES II AND XVI: WORK SKILLS AND THEIR TRANSFERABILITY AS INTENDED BY THE EXPANDED VOCATIONAL FACTORS REGULATIONS EFFECTIVE FEBRUARY 26, 1979, 1982 WL 31389, Social Security Ruling (SSR) 82-41 and 20 C. F. R. Part 404, Subpart P, Appendix 2).

    8.    Plaintiff had not been under a disability, as defined in Act, from October 1, 2004 through the date of this decision (20 C. F. R. §§ 404.1520(g) and  416.920(g)).

(Tr. 16-24).

## VII. STANDARD OF REVIEW

This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  *Longworth v. Commissioner Social Security Administration*, 402 F.3d 591, 595 (6th Cir. 2005) (*citing Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir.2004) (*quoting Walters v. Commissioner of Social Security,* 127 F.3d 525, 528 (6th Cir. 1997)).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007).  "The existence of such disability must be demonstrated by medically acceptable clinical and laboratory diagnostic findings, and the overall burden of proof rests upon the claimant."  42 U.S.C. §§ 423(d)(3), (d)(5); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1984).

In deciding whether to affirm the Commissioner's decision, it is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record.  *Id.* (*citing Him v. Commissioner of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999)).  The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion."  *Longworth, supra,* 402 F. 3d at 595 (*citing Warner, supra*, 375 F.3d at 390) (*citing Kirk v. Secretary of Health & Human Services,* 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied*, 103 S. Ct. 2478 (1983) (internal quotation marks omitted)).  If substantial evidence supports the Commissioner's decision, this Court will defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion."  *Id.* (*citing Warner,* 375 F.3d at 390) (*quoting Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)).

**VIII. DISCUSSION**

Plaintiff seeks reversal of the Commissioner's adverse decision, that Plaintiff be found disabled and thus eligible to receive benefits in accordance with his application for SSI and DIB. Plaintiff contends that: (1) the ALJ erred by rendering a decision which improperly assessed Plaintiff's impairments under Listing 1.02; (2) the ALJ failed to attribute controlling weight to the opinions of Plaintiff's treating physicians; (3) the ALJ failed to properly assess Plaintiff's left knee and right shoulder impairments, and (4) the ALJ failed to properly include Plaintiff's complaints of pain in the hypothetical question posed to the VE.

1. **DID THE ALJ ERR IN FAILING TO CONSIDER PLAINTIFF'S IMPAIRMENTS UNDER 1.02 OF THE LISTING?**

Plaintiff first challenges the ALJ"s failure to accept his use of two crutches for a period of sixteen months in determining whether Plaintiff met 1.02 of the Listing. Defendant argues that Plaintiff does not meet the requirements as he can effectively ambulate as defined under the Act. Consequently, Plaintiff does not meet the criteria of the 1.02 of the Listing.

Section 1.02 of 20 C. F. R. Pt. 404, Subpt. P, App. 1 provides:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: (A) Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to **ambulate effectively**, as defined in 1.00B2b; or (B) Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. 20 C. F. R. Pt. 404, Subpt. P, App. 1, (2)(b)(1) (Thompson Reuters 2010). To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace

11

over a sufficient distance to be able to carry out activities of daily living. 20 C. F. R. Pt. 404, Subpt. P, App. 1, (2)(b)(2) (Thomson Reuters 2010). Specifically, the claimant must have the ability to travel without companion assistance to and from a place of employment or school. 20 C. F. R. Pt. 404, Subpt. P, App. 1, (2)(b)(2) (Thomson Reuters 2010).

Examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. 20 C. F. R. Pt. 404, Subpt. P, App. 1, (2)(b)(2) (Thomson Reuters 2010). The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation. 20 C. F. R. Pt. 404, Subpt. P, App. 1, (2)(b)(2) (Thomson Reuters 2010).

The ALJ did not determine that Plaintiff is without an impairment that affects his ability to walk (Tr. 18). Rather, the ALJ determined Plaintiff did not meet the "inability to ambulate effectively" requirement of 20 CFR Part 404, Subpart P, Appendix 1, Listing 1.02(B). Prior to Plaintiff's total knee replacement, Dr. Rosario suggested that Plaintiff use crutches and a brace (Tr. 194). Approximately one month later in November 2004, Dr. Rosario noted that Plaintiff was using **a** cane (Tr. 193). Plaintiff twice noted in February 2005, that Plaintiff wore the brace on his left knee (Tr. 185, 190). Plaintiff's total knee replacement occurred on March 3, 2005. There is no post-surgery prescription for the use of crutches and/or canes for more than twelve months.

These observations by Dr. Rosario do not constitute a longitudinal view of Plaintiff's inability to ambulate effectively on a sustained basis of more than 12 months. When the ALJ relied on this lack of evidence to determine that he did not meet a listed impairment, the ALJ did not substitute his own judgment on a medical issue for that of medical professionals. The ALJ acted as a fact-finder and

12

used the determinations of all treating sources and their reports to assess physical and mental impairments.

Reasonable minds might accept this relevant evidence as adequate to support a conclusion that Plaintiff could ambulate effectively. Thus, Plaintiff did not meet the threshold requirements for disability under 1.02 of the Listing. The Magistrate, therefore, defers to this finding.

**2.  DID THE ALJ FAIL TO ATTRIBUTE CONTROLLING WEIGHT TO THE OPINIONS OF PLAINTIFF'S TREATING PHYSICIANS?**

Plaintiff claims that the ALJ erred by failing to give substantial deference to a second assessment by Dr. Rosario. Defendant counters with the argument that the ALJ, in fact, gave controlling weight to Dr. Rosario's opinion.

Key among the governing standards to which an ALJ must adhere is the premise that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Roso v. Commissioner of Social Security*, 2010 WL 1254831, *14 (N. D. Ohio 2010) (*See* TITLES II AND XVI: GIVING CONTROLLING WEIGHT TO TREATING SOURCE MEDICAL OPINIONS, SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004)). In fact, a presumption exists that the opinion of a treating physician is entitled to great deference. *Id.* (*citing Rogers v. Commissioner of Social Security,* 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Id.*(*citing Wilson,* 378 F.3d at 544). "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Id.* (*citing Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004)(*quoting Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985)).

When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he or she must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors.  *Id*.  If an ALJ decides to discount or reject a treating physician's opinion, he or she must provide "good reasons" for doing so.  *Id.* at *15.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*

Here, the ALJ followed the procedural requirement of identifying the reasons for giving controlling weight to Dr. Rosario's opinions.  In fact, he states in the decision that "Dr. Rosario's opinions are well supported by objective medical evidence and are consistent with the medical expert's testimony and the medical record as a whole" (Tr. 22).

**3.    DID THE ALJ PROPERLY ASSESS PLAINTIFF'S CHRONIC PAIN?**

Plaintiff states that the ALJ failed to accurately assess Plaintiff's chronic left knee and right shoulder pain.  Defendant contends that the ALJ properly considered Plaintiff's pain and found his complaints not supported by the evidence.

Severe pain is sufficient to establish a disability, if such pain is the result of a medically determinable impairment.  *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). When considering pain in determining disability, the two-step test of *Duncan v. Secretary of Health and Human Servs.,* 801 F.2d 847, 853 (6th Cir. 1986) must be applied.  The first step of the two part *Duncan* test is for the ALJ to examine whether there is objective medical evidence of an underlying medical condition.  *Id.*

Acknowledging the assessments of Dr. Rosario, a physical therapist, and emergency room physicians, it is beyond doubt that there is sufficient objective medical evidence of an underlying medical condition which would cause Plaintiff's pain.  The ALJ considered the medically documented

14

sources of pain in Plaintiff's shoulder and knee, meeting the threshold requirement of *Duncan* (Tr. 17, 18, 19).

With the first step of the *Duncan* two-step test satisfied, the ALJ must determine whether the objective medical evidence confirms the severity of the alleged pain arising from the condition or whether the objectively established medical evidence is of such severity that it can reasonably be expected to produce the alleged disabling pain. *Id*. During his review of the objective medical evidence, the ALJ determined that there was insufficient objective medical evidence to support Plaintiff's claim regarding the severity or frequency of the pain as to preclude the range of work. .

Since the ALJ applied the correct legal standards or has made findings of fact supported by substantial evidence in the record, the Magistrate defers to the ALJ findings.

**4.    DID THE ALJ ERR IN POSING AN INCOMPLETE AND INACCURATE HYPOTHETICAL TO THE VE?**

In his Brief, Plaintiff argues that the ALJ should have included an additional limitation in the hypothetical posed to VE that if a claimant were off task for 10% of the time, it would preclude all sedentary work.

A hypothetical question must precisely and comprehensively set out every **physical and mental impairment** of the applicant that the ALJ accepts as true and significant. *Mann v. Astrue,* 2010 WL 2342486, *7 (N. D. Ohio 2010) (*See Varley v. Secretary of Health & Human Services,* 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by the evidence in the record, it need not reflect unsubstantiated allegations by claimant. *Id.* (*see Blacha v. Secretary of Health & Human Services,* 927 F.2d 228, 231 (6th Cir. 1990)).

"Being off task" typically denotes challenging behavior. It does not constitute a physical or mental impairment. Even if "being off task" were considered a physical or mental impairment, there is no medically determinable evidence in the record that would substantiate Plaintiff's claim that he is

15

"off task" at least 10% of the time**.** The ALJ was not required to ask the VE a question proposed by counsel as an interpretation of the physical therapist's recommendations.

## IX. CONCLUSION

In view of the foregoing evidence and findings of the ALJ, the Magistrate affirms the Commissioner's decision.

**IT IS SO ORDERED.**

/s/Vernelis K. Armstrong
United States Magistrate Judge


**Date: September 24, 2010**